1
2
3
4
5
6
7
8
9
10
11
12

NOT FOR CITATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

13   LARRY STINER,                              )   No. C 05-5400 JF (PR)
                                               )
14              Petitioner,                     )   **ORDER DENYING PETITION**
                                               )   **FOR WRIT OF HABEAS**
15        vs.                                   )   **CORPUS**
                                               )
16   ROBERT L. AYERS, JR.,                      )
                                               )
17              Respondent.                     )
                                               )
18   _____

19
20        Petitioner, a California state prisoner proceeding pro se, seeks a writ of habeas corpus
21   pursuant to 28 U.S.C. § 2254, challenging a decision by the California Board of Prison Terms
22   ("Board") that he is unsuitable for parole.  The Court issued an order of partial dismissal and
23   directed Respondent to show cause why the remaining cognizable claims should not be granted.[1]
24   Respondent has filed an answer addressing the merits of the petition, and Petitioner has filed a
25   traverse.   Having reviewed the briefs and the underlying record, the Court concludes that
26   Petitioner is not entitled to relief based on the claims presented and will deny the petition.

27
28   1. The proper Respondent in this action is Robert L. Ayers, the current Warden at San Quentin
     State Prison, where petitioner is incarcerated, rather than the originally-named defendant, S.W.
     Ornoski.  Fed. R. Civ. P. 25(d).  Accordingly, the Clerk shall terminate S.W. ORNOSKI and
     substitute ROBERT L. AYERS as the Respondent.

**BACKGROUND**

The charges against Petitioner arose from his conspiring with fellow members of United Slaves, a politically active African-American group, to murder members of the Black Panthers. Petitioner, who currently is in custody at San Quentin State Prison, was convicted in 1969 by a Los Angeles Superior Court jury of conspiracy to commit murder (Cal. Pen. Code § 182) and was sentenced to an indeterminate sentence of fifteen years to life in state prison. Ans., Ex. C (Transcript of Apr. 5, 2005 parole suitability hearing) at 9; Ans., Ex. D (1994 Presentence Report and Recommendation) at 3.

The facts of the commitment offense are as follows. In 1969, Petitioner was present at a meeting of African-American students at the University of California at Los Angeles. The students had congregated to elect a committee that in turn would select a student director for a black students' program at UCLA. Ans., Ex. B (Oct. 2, 1969 Probation Officer's Report) at 5. Petitioner, himself a student at UCLA, was "armed with a pistol in his belt." Ans., Ex. C at 8. Other members of Petitioner's group, United Slaves, were at the meeting along with members of their rival group, the Black Panthers. Id. Jones, a United Slaves member, "allegedly confronted and disrespected Elaine Brown, a member of the Black Panthers":

> Carter [one of the shooting victims] inform[ed] other Black Panther members that Jones had disrespected Ms. Brown. Carter and Huggins [the other shooting victim,] along with another [] Black Panther member confronted Jones. Obscenities were exchanged and the two victims along with the other unidentified male attacked Jones. Hubert, a [United Slaves] member, walked to where the three were fighting and pulled a gun. After shots had been fired, Huggins was found to have been fatally shot in the back and Carter had been shot in the heart and killed as he attempted to dive over some tables to escape. All of the students fled from the cafeteria. Hubert allegedly fired more shots into the room as he fled the scene. [Petitioner] was wounded by a shell fragment, which apparently ricocheted and lodged in his back during the eruption.

Pet., Ex. B (Life Prisoner Evaluation Report, April 2005 Calendar) at 1. It is unclear whether Petitioner fired any gunshots. Ans., Ex. E (2005 Order of the Superior Court of Los Angeles Denying Petition for Writ of Habeas Corpus) at 2 n.1. At the time of the shooting, Petitioner was facing a charge of armed robbery in connection with a crime he committed with his brother, during which someone was shot. He later was convicted of this crime, though it appears that the

1  sentence on that conviction was stayed.  Ans., Ex. C at 41-42.

2       Petitioner started serving his prison term in 1969 and was housed in San Quentin.  Id. at

3  14.  In 1974, Petitioner and his brother, escaped from San Quentin, and fled the United States to

4  live in South America, returning voluntarily twenty years later in 1994.  Id.  After his return,

5  Petitioner was charged and convicted of felony escape from prison without the use of force or

6  violence (Cal. Pen. Code § 4530(b)).

7       In April 2005, the Board found Petitioner unsuitable for parole because he would pose an

8  unreasonable danger to society if released, citing as its reasons that "[t]he offense was carried out

9  in a dispassionate and calculated manner[, an] execution-style murder," that "the motive for the

10  crime was inexplicable or trivial in relationship to the offense," and that Petitioner had a history

11  of violent or assaultive behavior.  Id. at 56-57.  In response, Petitioner filed state habeas petitions,

12  all later summarily denied, in the California superior, appellate, and supreme courts.  Ans. ¶¶ 6-8.

13  Petitioner filed the instant federal habeas petition in 2005.

14       As grounds for federal habeas relief, Petitioner alleges that the Board violated his right to

15  due process by (1) failing to use the sentencing matrix to produce a sentence proportionate to that

16  for other inmates convicted of murder; and (2) by issuing a decision unsupported by "some

17  evidence" of petitioner's future dangerousness.[2]  Order to Show Cause at 2.

**DISCUSSION**

19  **A.    Standard of Review**

20       This Court will entertain a petition for writ of habeas corpus "in behalf of a person in

21  custody pursuant to the judgment of a State court only on the ground that he is in custody in

22  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

23  _____

24  2. Respondent contends that this Court does not have subject matter jurisdiction over the
instant petition because California inmates have no federally-protected due process right to

25  parole release.  Ans. ¶ 9.  Controlling Ninth Circuit authority, however, holds that Petitioner has
a federally-protected liberty interest in parole release and therefore this Court has subject matter

26  jurisdiction pursuant to 28 U.S.C. § 2254.  See McQuillion v. Duncan, 306 F.3d 895, 902 (9th

27  Cir. 2002); see also Sass v. California Board of Prison Terms, 461 F.3d 1123, 1125 (9th Cir.
2006).

28

1    The petition may not be granted with respect to any claim that was adjudicated on the

2    merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision

3    that was contrary to, or involved an unreasonable application of, clearly established federal law,

4    as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

5    based on an unreasonable determination of the facts in light of the evidence presented in the State

6    court proceeding." 28 U.S.C. § 2254(d).

7    "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

8    arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

9    the state court decides a case differently than [the] Court has on a set of materially

10   indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the

11   'reasonable application clause,' a federal habeas court may grant the writ if the state court

12   identifies the correct governing legal principle from [the] Court's decisions but unreasonably

13   applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court

14   may not issue the writ simply because that court concludes in its independent judgment that the

15   relevant state-court decision applied clearly established federal law erroneously or incorrectly.

16   Rather, that application must also be unreasonable." Id. at 411.

17   "[A] federal habeas court making the 'unreasonable application' inquiry should ask

18   whether the state court's application of clearly established federal law was 'objectively

19   unreasonable.'" Id. at 409. In examining whether the state court decision was objectively

20   unreasonable, the inquiry may require analysis of the state court's method as well as its result.

21   Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively

22   unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss

23   of error fails to give proper deference to state courts by conflating error (even clear error) with

24   unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

25   A federal habeas court may grant the writ if it concludes that the state court's adjudication

26   of the claim "results in a decision that was based on an unreasonable determination of the facts in

27   light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

28

1   The court must presume correct any determination of a factual issue made by a state court unless

2   the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C.

3   § 2254(e)(1).

4   **B.     Petitioner's Claims**

5       **1.     The Board's Failure to Use California's Sentencing Matrix**

6           Petitioner contends that the Board's failure to use "the [California Code of Regulations,

7   title 15 sentencing] matrix in order to quantify the factors present in murders and produce

8   proportionate sentences for murders violates due process."  Pet., P. & A. at 7.  In support of this

9   contention, Petitioner provides no federal legal authority, but rather cites only California case

10   law.  Id.

11           Petitioner's claim is without merit.  Simply put, the Board is under no duty to use the

12   matrix after it has determined that a prisoner is unsuitable for parole.  In re Dannenberg, 34 Cal.

13   4th 1069, 1071 (Cal. 2005).  "The Legislature has not disturbed the Board's long-standing formal

14   policy that a determination of individual suitability must precede the setting of a "uniform"

15   parole release date."[3]  Id.  "The BPT acts properly in determining unsuitability, and the inmate

16   receives all constitutional process due, if the Board provides the requisite procedural rights,

17   applies relevant standards, and renders a decision supported by "some evidence."  Id.  Federal

18   courts have held repeatedly that the Board's use of the "some evidence" standard sufficiently

19   protects an inmate's due process rights.  Sass, 461 F.3d at 1129.

20           As the next section demonstrates, the Board based its decision on "some evidence,"

21   thereby complying with the requirements of due process.  Accordingly, the Court concludes that

22   the state court's determination was not contrary to, or an unreasonable application of, clearly

23   established Supreme Court precedent, nor was it based on an unreasonable determination of the

24   _____

25   3. "[W]e conclude that the Board, exercising its traditional broad discretion, may protect public
    safety in each discrete case by considering the dangerous implications of a life-maximum
26   prisoner's crime individually.  While the Board must point to factors beyond the minimum
    elements of the crime for which the inmate was committed, it need engage in no further
27   comparative analysis before concluding that the particular facts of the offense make it unsafe, at
    that time, to fix a date for the prisoner's release."  In re Dannenberg, 34 Cal. 4th at 1071.
28

1  facts in light of the evidence presented.  28 U.S.C. § 2254(d) (1), (2).

2          **2.      The Board's Decision is Supported by "Some Evidence"**

3          Petitioner contends that the Board also violated his due process rights by issuing a

4  decision unsupported by some evidence of Petitioner's future dangerousness.[4]  Pet., P. & A. at 8.

5  In particular, Petitioner objects to the Board's characterizing his crime of conviction as

6  "particularly cruel or egregious," language Petitioner finds arbitrary and vague.  Id. at 11.

7          The Board complies with due process provided that there is "some evidence" to support

8  its decision.  It is clearly established law that a parole board's decision deprives a prisoner of due

9  process if the board's decision is not supported by "some evidence in the record," or is

10 "otherwise arbitrary."  Sass, 461 F.3d at 1129 (adopting "some evidence" standard for

11 disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)); see

12 McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) (same).  Additionally, the evidence

13 underlying the Board's decision must have some indicia of reliability.  McQuillion, 306 F.3d at

14 904.  Accordingly, if the Board's determination of parole suitability is to satisfy due process,

15 there must be some evidence, with some indicia of reliability, to support the decision.  Rosas v.

16 Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005); McQuillion, 306 F.3d at 904.

17         In assessing whether there is "some evidence" to support the Board's denial of parole,

18 this Court must consider the regulations that guide the Board in making its parole suitability

19 determinations.  The Board is to consider "all relevant, reliable information available."  15 Cal.

20 Code Regs. § 2402(b).  The panel shall first determine whether the life prisoner is suitable for

21 release on parole.  Id. § 2402(a).  Regardless of the length of time served, a life prisoner shall be

22 found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an

23 unreasonable risk of danger to society if released from prison."  The regulations enumerate

24 various circumstances tending to indicate whether or not an inmate is suitable for parole.

25  ──────────────

26 4. Petitioner contends that the use of the "some evidence" standard itself is a violation of due
27 process.  Pet., P. & A. at 9.  This claim is foreclosed by Ninth Circuit precedent, which
   repeatedly has held that the "some evidence" standard is consonant with due process.  Sass, 461
28 F.3d at 1129.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Stiner400.hcruling.md

6

1  Title 15 Cal. Code Regs. § 2402(c)-(d).[5]

2       Applying this law to the instant case, the Court concludes that Petitioner's claim is

3  without merit.  There was some evidence to support the Board's parole decision, based not only

4  on the circumstances of the commitment offense, but also on other relevant considerations.  The

5  Board noted that "[m]ultiple victims were attacked, injured and were killed in the same incident"

6  and that "[t]he offense was carried out in dispassionate and calculated manner[, an] execution-

7  style murder."  Id.  The Board also found that "[t]he motive for the crime is inexplicable and

8  trivial in relationship to the offense," a violent uproar over alleged insults.  Id.

9       In addition to the nature and circumstances of the commitment offense, the Board also

10  considered other parole suitability factors, such as Petitioner's criminal history and his behavior

11  in prison.  The Board noted that Petitioner had a "record of violence and assaultive behavior, an

12  escalating pattern of criminal conduct," specific reference to the fact that Petitioner faced a

13  charge of robbery when the commitment offense occurred, indicating, in the Board's opinion,

14  that Petitioner was more involved in the circumstances leading to the commitment offense and

15  "in the violent aspect of the [United Slaves] than [Petitioner] [told] us." Id. at 57. Other stated

16  reasons on which the Board based its decision were that "[Petitioner] has failed to upgrade

17  vocationally [while in prison]" and that he has "a serious disciplinary report and [he has] that

18  escape of 20 years," facts that indicated to the Board that Petitioner failed to behave properly in

19  prison. Id.  The Board found Petitioner's escape in 1974, after he had served only five years of

20  his sentence, highly probative of future dangerousness and indicative of a profound lack of

22  5. The circumstances tending to show an inmate's unsuitability are:  (1) the commitment offense
23  was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of
violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such
24  as a "lengthy history of severe mental problems related to the offense;" and (6) prison
misconduct.  15 Cal. Code Regs. § 2402(c).  The circumstances tending to show suitability are:
25  (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense
26  was committed as a result of stress which built up over time; (5) Battered Woman Syndrome;
(6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans
27  for future including development of marketable skills; and   (9) institutional activities that
28  indicate ability to function within the law.  Id. § 2402(d).

1  respect for the law and its use to protect public safety.  The Board noted that the "District

2  Attorney of Los Angeles County as well as the Los Angeles Police Department opposed

3  [Petitioner's] release."  Id. at 58.  Finally, the Board declared that "[Petitioner] needs to have

4  therapy in order to face, discuss, understand and cope with stress in a nondestructive manner . . .

5  [H]e continues to be unpredictable and a threat to others."  Id.  Because some evidence exists to

6  support its determination of parole unsuitability, the Board's decision complied with the

7  requirements of due process.

8       The foregoing discussion also addresses Petitioner's contention that the Board's

9  continued reliance on the language "particularly cruel or egregious," in this and other cases, is

10  unconstitutionally "arbitrary."   The only relevant question is whether the Board made an

11  individualized determination of Petitioner's future dangerousness that was based on "some

12  evidence" bearing indicia of reliability.  The records shows that rather than issuing boilerplate

13  decisions in a procrustean effort to thwart the protections of due process, the Board considered

14  the prescribed factors and applied them in an individualized assessment of whether Petitioner

15  was suitable for parole.  See 15 Cal. Code Regs. §§ 2281, 2404.[6]

16       Petitioner's contention that the regulatory language the Board uses is unconstitutionally

17  vague is without merit.  As an initial matter, "[t]he Due Process Clause does not require the same

18  precision in the drafting of parole release statutes as is required in the drafting of penal laws."

19  Hess v. Board of Parole and Post-Prison Supervision, 514 F.3d 909, 913-14 (9th Cir. 2008).  The

20  language the Board uses and to which Petitioner objects echoes that of California Code of

_____

22  6. Petitioner also contends that the "[Board's] use of uncharged unproven elements of his crime
23  [that is, the Board's description of the crime as "particularly cruel or egregious"] to continue
denying parole violates Petitioner's constitutional right to a jury trial under the Sixth Amendment
24  of the United States Constitution," and cites as authority for this assertion Apprendi v. New
Jersey, 530 U.S. 466 (2000).  The central holding of Apprendi is that "[o]ther than the fact of a
25  prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory
maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 490.  The
26  Board's decision, based in part on its finding that the murder was "particularly cruel and
egregious" does not increase the penalty for Petitioner's crime, but it is rather a decision on
27  whether his already-imposed imprisonment should continue and, therefore, Apprendi is not
applicable to the issue at hand.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Stiner400.hcruling.md

8

1   Regulations title 15, section 2402(c)(1), which states that a circumstance indicating parole

2   unsuitability is that the commitment offense was carried out "in an especially heinous, atrocious

3   or cruel manner."  Section 2402(c)(1) then provides a list of five factors to consider when

4   determining whether a crime was carried out in this manner, including the presence of multiple

5   victims, the abuse or mutilation of the victim and a trivial motive for the crime.  See id. at

6   (A)-(E).  Because the term "especially heinous, atrocious, or cruel" is further limited by these

7   five detailed factors, the language cannot plausibly be considered unconstitutionally vague.  Cf.

8   Arave v. Creech, 507 U.S. 463, 470-78 (1993) (Idaho death penalty statute citing as an

9   aggravating factor crimes carried out in an "utter disregard for human life" was not

10  impermissibly vague because limiting construction had been adopted which defined factor as

11  those crimes demonstrating "the utmost disregard for human life, i.e., the cold-blooded pitiless

12  slayer").  The language from which the Board derives its guidance and authority is sufficiently

13  detailed to focus the decision-making process of the Board.

14          Accordingly, the Court concludes that the state court's determination was not contrary to,

15  or an unreasonable application of, clearly established Supreme Court precedent, nor was it based

16  on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.

17  § 2254(d) (1), (2).

18                                          **CONCLUSION**

19          The Court concludes that Petitioner has failed to show any violation of his federal

20  constitutional rights in the underlying state court proceedings and parole hearing.  Accordingly,

21  the petition for writ of habeas corpus is DENIED.  The Clerk shall enter judgment and close the

22  file.

23          IT IS SO ORDERED.

24  DATED: __3/31/08_____

25                                          JEREMY FOGEL
                                            United States District Judge

26

27

28

Order Denying Petitioner for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Rogers069.hcruling.md

                                            9